IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  09-30047 |
| | ) | |
| DERRICK E. DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Derrick E. Davis' Objection to Report and Recommendation of United States Magistrate Judge Denying the Defendant's Motion to Suppress Evidence and Quash Arrest (d/e 26) (Objection).  On November 20, 2009, Davis filed a Motion to Suppress Evidence and to Quash Arrest (d/e 22) (Motion).  On December 9, 2009, United States Magistrate Judge Byron G. Cudmore held an evidentiary hearing on the Motion.  On December 18, 2009, Judge Cudmore entered a Report and Recommendation (d/e 24), recommending that this Court deny the Motion.  Davis now objects to the Report and Recommendation.  After careful review of the evidence de novo, the Court

1

overrules the Objection, adopts the Report and Recommendation, and denies the Motion.

## STATEMENT OF FACTS

The Court has reviewed the evidence presented at the December 9, 2009, evidentiary hearing, including the Transcript (d/e 28) (Transcript) of the hearing, and determines that the following facts were proven by a preponderance of the evidence. On or about October 16, 2008, Jacksonville, Illinois, Police Directed Response Team (DIRT) used a confidential source to conduct a controlled drug purchase from a person named Shawn Meredith at a residence on Beecher Street in Jacksonville. The confidential source told the officers that Meredith had video surveillance equipment at the residence and might have weapons.

On the evening of October 21, 2008, Jacksonville, Illinois, Police DIRT members Sergeant Shawn Walker, Detective Brad Rogers, and Officers Kyle Chumley and Olivia Brune were conducting surveillance in the City of Jacksonville. Brune was driving an unmarked vehicle with Walker as her passenger. Rogers and Chumley were driving together in a different, unmarked vehicle. All of the officers were dressed in plain clothes.

At approximately 9:50 p.m., that evening, Brune was stopped at the

corner of College and Church Streets in Jacksonville. She observed a white Cadillac approach the intersection. She recognized the driver as Justin Davis. A day earlier, the Cadillac was parked in front of the Beecher residence where the controlled drug purchase had occurred five days earlier. Brune saw that someone was in the front passenger seat. The passenger seat, however, was reclined. As a result, Brune could not identify the passenger because her view was obstructed. Brune believed that the passenger was Meredith.

Brune decided to follow the Cadillac. Brune observed the Cadillac make a left turn onto Morton Avenue without using a turn signal. Brune continued following the Cadillac. The Cadillac turned south onto Country Club Road. Walker then telephoned Rogers and Chumley and asked them to respond as well. Country Club Road is a loop that passes through a wooded area and next to a lake. Brune and Walker drove onto Country Club Road from one end, and Rogers and Chumley entered from the other end. The officers drove both vehicles toward the Cadillac in between.

The Cadillac stopped at a gravel parking area off Country Club Road near a lake. Justin Davis was driving. Defendant Derrick Davis, not Meredith, was the person in the passenger seat. Zack Marburger and

3

Keenan Burnett were in the back seat. The four individuals were driving around with no apparent destination. Marburger and Burnett testified they were smoking marijuana. The occupants also admitted they had liquor in the car. Justin Davis testified he was handling a revolver and had fired the revolver once or twice during the drive. Justin Davis parked on the gravel area for a moment during the drive. The parking area was not lit.

At approximately 10:00 p.m., Brune and Walker caught up to the Cadillac a few moments after Justin Davis parked on the gravel area. Rogers and Chumley arrived almost immediately from the other direction. The two unmarked vehicles kept their headlights on after they parked. According to Brune, the officers' vehicles were far enough away from the Cadillac that Justin Davis could have driven away if he so chose. Brune stated that she did not intend to issue a traffic citation to the driver of the Cadillac for making a left turn onto Morton without signaling.

All four officers exited their vehicles and started walking toward the Cadillac. All four carried flashlights that were turned on. At this point, Justin Davis said, "Oh fuck." Walker was able to read Justin Davis' lips, and so knew that Davis had uttered the expletive. Justin Davis then tossed the revolver to Derrick Davis and told him to do something with it. Derrick

Davis bent over toward his feet. The officers saw the person in the front passenger seat bend down, or dive, toward the floorboard. Walker considered this a dangerous action. He announced that they were Jacksonville Police Officers. He directed the persons in the Cadillac to raise their hands. Justin Davis, Marburger, and Burnett complied. Derrick Davis remained down toward the floorboard of the front passenger seat. Rogers and Chumley approached the front passenger door. Chumley ordered Derrick Davis out of the vehicle. As Derrick Davis exited the vehicle, Rogers saw the revolver between Derrick Davis' legs in the vehicle. Rogers called out, "Gun! Gun!" The officers then drew their weapons and arrested the four occupants of the vehicle. The officers recovered the revolver and then searched the vehicle. The officers found some crack cocaine located in the pocket of a red coat.

Marburger and Keenan Burnett's mother, Carla Hendricks, both testified that Detective Rogers later stated that he did not like Derrick Davis or Davis' father. According to Marburger and Hendricks, Rogers stated that he was going to go federal with this case because Derrick Davis would get more time. On June 2, 2009, Defendant Davis was indicted on the present federal charge of felon in possession of a weapon. Indictment (d/e 5).

5

## ANALYSIS

Defendant Davis moves to suppress the revolver and quash his arrest on the grounds that the officers violated his Fourth Amendment right against illegal searches and seizures. The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. As a general rule, officers must secure a warrant before conducting a search or seizure. See United States v. Robles, 37 F.3d 1260, 1263 (7th Cir. 1994). In this case, the officers conducted the stop and arrest without a warrant. As a result, the Government has the burden to establish by a preponderance of the evidence that the officers' actions fit within an exception to the warrant requirement. United States v. Basinski, 226 F.3d 829, 833 (7th Cir. 2000).[1]

The Government has established that the stop and seizure of the weapon was valid. Initially, the officers approached a vehicle parked in a public place. The officers were not in uniform and their vehicles were

---

[1] Davis must also demonstrate that he had a reasonable expectation of privacy in the vehicle to establish standing to assert a Fourth Amendment claim. United States v Sweeney, 688 F.2d 1131, 1143 (7th Cir. 1982). Judge Cudmore found that Davis had standing because the vehicle was owned by his mother, and he was authorized to use the vehicle. Transcript, at 7-8; Report and Recommendation, at 12. Judge Cudmore, however, also observed that the issue of standing is moot in this case. Report and Recommendation, at 12. The Court agrees with Judge Cudmore's analysis of this matter. The Government, furthermore, does not dispute standing at this time. See Government's Response in Opposition to Defendant's Objection to Report and Recommendation (d/e 27), at 7 n.2.

unmarked. Officer Brune testified that the Cadillac was not blocked in by the officers' vehicles, and the occupants of the Cadillac were free to leave at that time. The Court finds this testimony to be credible. Thus, at that moment, there was no stop; the officers were just approaching a parked car in a public place. As Judge Cudmore observed, "Generally, '[a]n officer needs no reason to look through the windows of a car parked in a public place.'" Report and Recommendation, at 13 (quoting United States v. Thornton, 463 F.3d 693, 698-99 (7th Cir. 2006)).

The officers seized the occupants of the Cadillac when Derrick Davis ducked out of sight. Sergeant Walker announced that they were police and ordered the occupants of the Cadillac to raise their hands. At that point, the occupants were not free to leave; there was a seizure for Fourth Amendment purposes. See Michigan v. Chesternut, 486 U.S. 567, 573 (1988). The officers seized the occupants of the Cadillac as part of a valid investigative stop. Police officers are justified in conducting a brief investigative stop of a vehicle if the officers are "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968). The officers had an articulable basis for the intrusion. They knew

that the Cadillac had been parked outside a residence where drug transactions were being conducted. The informant had told them that the dealer at the residence, Meredith, had a weapon. As the officers approached the Cadillac, Sergeant Walker saw Justin Davis curse, and then observed the front passenger duck down out of sight. Under these circumstances, the officers reasonably believed that the passenger's movement represented a possible danger to their safety. Sergeant Walker then took a limited step to protect himself and the other officers; he announced that they were police officers and directed the occupants of the vehicle to raise their hands. This was a minor intrusion that was justified based on the circumstances that the officers faced at that moment.

When Derrick Davis did not comply, the officers were presented with an even greater risk to their safety. The officers then took one more limited step to protect themselves. The officers instructed Derrick Davis to exit the vehicle. An officer conducting an investigative stop may take reasonable steps to insure officer safety, including directing a detainee to exit a vehicle. United States v. Hendricks, 319 F.3d 993, 1004 (7th Cir. 2003). The limited additional intrusion on Derrick Davis' Fourth Amendment right was justified under the circumstances.

At that point, the revolver was in plain view. A warrantless seizure of an item in plain view does not violate the Fourth Amendment if: (1) law enforcement officials are lawfully present, (2) the item is in plain view, and (3) the incriminating nature of the item is immediately apparent. United States v. Raney, 342 F.3d 551, 558-59 (7th Cir. 2003). As explained above, Officer Chumley and Detective Rogers were lawfully present to remove Derrick Davis from the vehicle. Detective Rogers saw the revolver in plain view between Derrick Davis' legs. The incriminating nature of the revolver was apparent because it is illegal in Illinois to carry a weapon in the passenger area of a vehicle. 720 ILCS 5/24-1(a)(4). At that point, the officers had probable cause to arrest Defendant Davis. There was no violation of his Fourth Amendment rights.

Davis argues that this case is controlled by the decision in United States v. Packer, 15 F.3d 654 (7th Cir. 1994). In Packer, a citizen telephoned the police to complain that a yellow Cadillac with four black occupants was parked near the citizen's residence at 1:00 a.m. Based on that call, officers drove to the street and arrested the occupants of the vehicle. The evidence found was suppressed because the officers had no probable cause to arrest and no articulable basis to conduct an investigative

stop. Id., at 655-58. Here, however, the officers had a reasonable articulable basis for the limited investigative stop that they conducted. The Packer case does not apply. The officers did not violate Derrick Davis' Fourth Amendment rights.

THEREFORE, Defendant Derrick E. Davis' Objection to Report and Recommendation of United States Magistrate Judge Denying the Defendant's Motion to Suppress Evidence and Quash Arrest (d/e 26) is OVERRULED. The Court adopts the Report and Recommendation entered December 18, 2009 (d/e 24) as outlined in this Opinion. The Defendant's Motion to Suppress Evidence and to Quash Arrest (d/e 22) is DENIED. IT IS THEREFORE SO ORDERED.

ENTER:   February 11, 2010

    FOR THE COURT:

                              s/ Jeanne E. Scott
                              JEANNE E. SCOTT
                              UNITED STATES DISTRICT JUDGE